IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00888-BNB

SHAUN A. BROWN,

      Plaintiff,

v.

CAPTAIN MOORE,
CAPTAIN ROMERO, and
SARGENT JORDAN,

      Defendants.

_____

ORDER OF DISMISSAL

_____

      Plaintiff, Shaun A. Brown, resides at the St. Francis Center, a Denver homeless

shelter.  He initiated the instant action by filing *pro se* on April 5, 2013, a Prisoner

Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983 and a Prisoner's Motion and

Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (ECF No. 3).

      On April 17, 2013, Magistrate Judge Boyd N. Boland entered an order (ECF No.

6) directing Mr. Brown to file within thirty days an amended Prisoner Complaint that

complied with the pleading requirements of Rule 8 of the Federal Rules of Civil

Procedure, sued the proper parties, and asserted the personal participation of each

named Defendant.  On May 1, 2013, Mr. Brown filed an illegible amended Prisoner

Complaint (ECF No. 8).  On May 15, 2013, Magistrate Judge Boland ordered Mr. Brown

to submit within thirty days a second amended Prisoner Complaint that was legible, and

clarified what, if any, sanction he received other than punitive segregation.  *See* ECF

No. 10.  On June 3, 2013, Mr. Brown submitted the second amended Prisoner
Complaint (ECF No. 12).  He asks for money damages.

Mr. Brown has been granted leave to proceed pursuant to the federal *in forma pauperis* statute, 28 U.S.C. § 1915.  Subsection (e)(2)(B) of § 1915 requires a court to dismiss sua sponte an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief.  A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  Under § 1983, a plaintiff must allege that the defendants have violated his or her rights under the Constitution and laws of the United States while they acted under color of state law.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The Court must construe the second amended Prisoner Complaint liberally because Mr. Brown is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  If the Prisoner Complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall*, 935 F.2d at 1110. However, the Court should not be an advocate for a *pro se* litigant.  *See id.*  For the reasons stated below, the Court will dismiss the second amended Prisoner Complaint as legally frivolous.

As background for his claims, Mr. Brown alleges he was a pretrial detainee

2

confined at the Denver Van Cise-Simonet Detention Center from December 28, 2012, to

May 10, 2013.  He asserts that on January 23, 2013, he was placed in segregation

allegedly for having a fight with another inmate.  He further asserts that, following a

disciplinary hearing on January 28, 2013, he was convicted on disciplinary charges and

sanctioned by placement in punitive segregation for thirty days.  He does not allege that

he lost any good-time credits.  Mr. Brown also complains that documents appealing

from the disciplinary conviction allegedly were altered by Defendant Captain Moore, and

that Defendants Sargent Jordan and Captain Romero ignored his concerns about the

alteration.  Further, Mr. Brown maintains that Sargent Jordan retaliated against him

post-segregation by changing his classification level to place him in a general population

unit housing the older brother of the other inmate with whom he fought, thus placing him

in what he alleges to be a "dangerous situation."  ECF 12 at 3.  However, Mr. Brown

does not allege that the brother injured him.  Lastly, Mr. Brown complains that he spent

thirty-six days in punitive segregation, instead of the thirty days he received as a

sanction.  On the basis of these allegations, Mr. Brown alleges that his Fourteenth

Amendment due process rights and Eighth Amendment right to be free from cruel and

unusual punishment were violated.

Generally, a plaintiff must make two showings in order to proceed on a

procedural due process claim.  *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492

F.3d 1192, 1209 (10th Cir. 2007).  First, a plaintiff must demonstrate that he possesses

a protected liberty or property interest, and second, a plaintiff must show the procedures

utilized were inadequate under the circumstances.  *Id.*  To the extent Plaintiff's due

process claim encompasses his time in punitive segregation serving the sanction

3

imposed as a result of his disciplinary conviction, he cannot show he has a protected liberty interest.

Plaintiff's due process claims are governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are "generally limited to freedom from restraint which . . . imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." The *Sandin* Court expanded upon its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974), to determine whether the Due Process Clause afforded an inmate who received thirty days in punitive segregation following a disciplinary hearing a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. *Sandin*, 515 U.S. at 483-84.

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*. *See Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *see also Estate of DiMarco v. Wyoming Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir.2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). The mere placement in administrative segregation does not, on its own, implicate a liberty interest. *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir.1996); *Templemen v. Gunter*, 16 F.3d 367, 369 (10th Cir.1994). Indeed, "administrative segregation is the sort of confinement that inmates should

4

reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled in part on other grounds*.

Under *Sandin* and its progeny, a right to due process in a disciplinary hearing arises only when the punishment imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life or when it will inevitably affect the duration of a sentence. *See Sandin*, 515 U.S. at 484, 487. Thus, the first question to address is whether an inmate's punishment imposed following a disciplinary hearing gives rise to a right to due process in the hearing under the Fourteenth Amendment. In this case, to prove that he suffered a due process violation, Plaintiff must demonstrate that the sanctioned restraint imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. If so, then the Court must determine whether the Plaintiff received due process in his disciplinary hearing.

A "significant and atypical hardship" sufficient to create a liberty interest is one that is of substantial degree (i.e., whether such conditions do more than mirror those in administrative segregation and protective custody) and duration. *See Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir.2002). For example, the Supreme Court determined that the government created a liberty interest subject to due process protections when officials placed an inmate indefinitely in a super-max prison where almost all human contact was prohibited and that made the inmate ineligible for parole. *Wilkinson*, 545 U .S. at 224. Moreover, the United States Court of Appeals for the Tenth Circuit (Tenth Circuit) found an inmate's allegations that he was confined to his cell for a three-year period for all but five hours each week and denied access to the telephone, showers, outdoor recreation, the law library and programs offered to general

5

population arguably implicated procedural due process concerns.  *See Fogle v. Pierson*, 435 F.3d 1252, 1257, 1259 (10th Cir.2006).

However, in *Sandin*, the Supreme Court determined that the inmate's confinement in punitive segregation, which (with insignificant exceptions) mirrored the conditions imposed on inmates in administrative segregation, did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction.  *Sandin*, 515 U.S. at 486.  As such, the inmate's punitive confinement of thirty days did not present the type of atypical, significant deprivation in which a State might create a liberty interest.  *Id.*  In *Gaines*, the Tenth Circuit noted that "[d]isciplinary segregation for some lesser period [than seventy-five days] could fail as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future, thereby making it futile to allow the *pro se* plaintiff to amend his complaint."  *Gaines*, 292 F.3d at 1226.

Here, Mr. Brown confirms that the punitive segregation imposed on him at the disciplinary hearing was only thirty days, although he contends he served thirty-six days.  Accordingly, the Court, guided by the principles of *Sandin*, *Gaines*, and *Wilkinson*, finds that his punitive segregation of thirty-six days does not constitute a significant duration necessary to demonstrate an "atypical and significant hardship." The due process claim is without merit.

Mr. Brown also complains that he was subjected to cruel and unusual punishment.  The Due Process Clause of the Fourteenth Amendment prohibits conditions of confinement for pretrial detainees that amount to unconstitutional punishment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Since Mr. Brown was a pretrial detainee when his claims arose, the Court must apply the standards applicable

6

under the Eighth Amendment in reviewing his cruel and unusual punishment claim. *See Howard v. Dickerson*, 34 F.3d 978, 980 (10th Cir. 1994).

A prisoner claiming that he has been subjected to cruel and unusual punishment based on the conditions of his confinement must demonstrate, in part, that the infringement was sufficiently serious. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The conditions must deprive a prisoner of the "'minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail." *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994) (internal quotation marks omitted). The core areas entitled to protection pursuant to the Eighth Amendment include food, shelter, sanitation, personal safety, medical care, and adequate clothing. *See Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992).

Mr. Brown fails to allege facts demonstrating that the conditions of his confinement violate his Eighth Amendment rights. The fact that Mr. Brown disagrees with the conditions of his confinement does not mean that he is deprived of the minimal civilized measure of life's necessities. In fact, as the Supreme Court of the United States has observed, "[t]o the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offense against society." *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *see also Battle v. Anderson*, 788 F.2d 1421, 1427-28 (10th Cir. 1986) (affirming that a prison is "not a nursery school" but a place for confining convicted felons). The claim of cruel and

7

unusual punishment also is meritless.  Therefore, the second amended Prisoner Complaint (ECF No. 12) will be dismissed as legally frivolous.

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Brown files a notice of appeal he must also pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the second amended Prisoner Complaint (ECF No. 12) and the action are dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  It is

FURTHER ORDERED that any pending motions are denied as moot.

DATED at Denver, Colorado, this __18th__ day of ____June_____, 2013.

BY THE COURT:


  s/Lewis T. Babcock_____
LEWIS T. BABCOCK, Senior Judge
United States District Court